# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2217
_____

Gary R. Lackey, Jr.

*Plaintiff - Appellant*

v.

Wells Fargo Bank, N.A.; Federal Home Loan Mortgage Corporation, also known as Freddie Mac

*Defendants - Appellees*

Kozeny & McCubbin, L.C.

*Defendant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: January 14, 2014
Filed: April 4, 2014

_____

Before RILEY, Chief Judge, WOLLMAN and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Gary Lackey, Jr. executed a note and deed of trust covering residential real estate but eventually defaulted. A foreclosure proceeding was initiated, and Lackey

brought this action, asserting several deficiencies with the foreclosure and seeking to quiet title to the property in himself.[1] The defendants Wells Fargo Bank and the Federal Home Loan Mortgage Corporation (Freddie Mac)[2] moved for summary judgment. The district court[3] granted the motion for summary judgment, and we affirm.

## I.

Lackey purchased a home in Kansas City, Clay County, Missouri on August 7, 2007, executing a note payable to Bank of Blue Valley and a deed of trust, which granted Mortgage Electronic Registration Systems, Inc. (MERS) a security interest in the property as nominee for the bank. The deed of trust named SMF Registered

---

[1]On appeal Lackey asserts that this is both a wrongful foreclosure and quiet title action. Lackey's second amended complaint, however, does not explicitly mention that he is seeking wrongful foreclosure redress. The second amended complaint alleges that certain irregularities associated with the foreclosure sale caused title not to transfer to Freddie Mac, and thus title should be quieted in Lackey. We therefore interpret Lackey's complaint as asserting both an equitable wrongful foreclosure action that seeks to set aside the foreclosure sale and a quiet title action in which Lackey claims that due to the deficiencies in the sale, title to the property should be quieted in himself. See Barnes v. Fed. Home Loan Mortg. Corp., No. 13-2033, 2014 WL 67894, at *1 (8th Cir. Jan. 9, 2014) (unpublished per curiam) (acknowledging that the plaintiff's quiet title claim was based on the viability of his wrongful foreclosure claim).

[2]Because Freddie Mac is a party to this case, the district court had original jurisdiction pursuant to 12 U.S.C. § 1452(f). Lackey's claims, nonetheless, are governed by Missouri law. See Peterson v. CitiMortgage, Inc., 704 F.3d 548, 550 (8th Cir. 2013).

[3]The Honorable Greg Kays, United States District Judge for the Western District of Missouri.

Services, Inc. trustee and was recorded with the Clay County, Missouri Recorder of Deeds on August 20, 2007.

On August 11, 2010, Wells Fargo recorded an Appointment of Successor Trustee with the Clay County Recorder of Deeds, naming itself as trustee and Kozeny & McCubbin, L.C. (Kozeny) as successor trustee. A notarized statement from Wells Fargo acknowledged that at the time of the appointment, Wells Fargo was the lawful holder of Lackey's 2007 note. Almost one year later, on August 1, 2011, MERS assigned its interest in the property as nominee to Wells Fargo via a Corporate Assignment of Deed of Trust, recorded on August 11, 2011. The next day, Wells Fargo recorded a second Appointment of Successor Trustee, naming Kozeny successor trustee. Wells Fargo attached another notarized statement acknowledging that it was the lawful holder of the note at the time of the second appointment. By this time, Lackey had already defaulted under the terms of the note and deed of trust by failing to make the required payments on February 15, 2011. Under the terms of the deed of trust, a default in payment was grounds for a non-judicial, trustee foreclosure sale of the property.

On September 19, 2011, Kozeny, as successor trustee, sold Lackey's property at a foreclosure sale to Freddie Mac and executed a Successor Trustee's Deed to Freddie Mac on October 7, 2011, which was recorded four days later. After becoming aware that the wrong certified mailing receipts were attached to the original Successor Trustee's Deed, Kozeny recorded a Corrective Successor Trustee's Deed on January 24, 2012, attaching the proper certified mailings receipts.

Lackey filed a pro se action in Clay County Circuit Court, and the case was removed to federal court, pursuant to 12 U.S.C. § 1452(f). Lackey then obtained counsel and filed a second amended complaint, seeking quiet title relief based on certain deficiencies in the foreclosure of the property. The defendants subsequently moved for summary judgment. The district court granted the motion, finding no

genuine issue of material fact regarding Lackey's claim. Specifically, the district court found that MERS's assignment of its interest in the deed of trust and the second successor trustee appointment established as a matter of law that a proper foreclosure sale occurred and no cloud on the title to the property existed. The district court found that MERS's assignment was sufficient to establish Wells Fargo's interest in the property and its right to appoint a successor trustee and that any discrepancy with the first successor trustee appointment was irrelevant. The district court also found that Lackey's quiet title action failed because he could not show that he possessed superior title to the property. Finally, the district court found that, while the original Successor Trustee's Deed attached the wrong certified mail receipts, the Corrective Successor Trustee's Deed attached the proper certified mail receipts, which provided sufficient proof that notice of the foreclosure sale was mailed to Lackey in compliance with Missouri's foreclosure statute.

After the district court's order was filed, Lackey moved to vacate the order. The district court denied the motion due to Lackey's failure to provide any newly discovered evidence or identify any errors of law or fact that would justify vacating the order. Lackey now appeals the district court's order granting summary judgment to the defendants.

## II.

We review the grant of summary judgment de novo, "viewing the record most favorably to the nonmoving party and drawing all reasonable inferences in its favor." M & I Marshall & Ilsley Bank v. Sunrise Farms Dev., LLC, 737 F.3d 1198, 1199 (8th Cir. 2013). Upon careful review, we affirm the district court's grant of summary judgment.

"'[W]hat constitutes a wrongful foreclosure sufficient to set aside a sale and what constitutes a wrongful foreclosure sufficient to recover damages in tort are not

the same.'" Fields v. Millsap & Singer, P.C., 295 S.W.3d 567, 571-72 (Mo. Ct. App. 2009) (quoting Dobson v. Mortg. Elec. Registration Sys., Inc./GMAC Mortg. Corp., 259 S.W.3d 19, 22 (Mo. Ct. App. 2008)). A wrongful foreclosure action seeking damages requires plaintiff to prove that he was not in default and, thus, there was no right to foreclose on the property. Id. at 572. A wrongful foreclosure action seeking to quiet title or set aside a sale may proceed, however, whenever plaintiff alleges certain wrongful acts that are sufficient to render the sale void. Id.; see also Reliance Bank v. Musselman, 403 S.W.3d 147, 150 (Mo. Ct. App. 2013); Dobson, 259 S.W.3d at 22. Here, Lackey does not allege that he was not in default at the time of the foreclosure proceedings. He argues instead that the foreclosure sale should be set aside and title quieted in himself due to irregularities in the foreclosure proceeding.

First, Lackey contends it is unclear who held title to the note at the time of Wells Fargo's first and second successor trustee appointment and, thus, Wells Fargo may not have been authorized to appoint Kozeny as successor trustee. Lackey argues, accordingly, that if the successor trustee appointments were not valid, then Kozeny did not have a legal right to foreclose on the property and title to the property did not transfer to Freddie Mac. Second, Lackey contends that Wells Fargo was required to produce the original note prior to the commencement of foreclosure on the property. Finally, Lackey argues that he was not provided notice of the non-judicial foreclosure as required by statute.

Lackey claims that these defects are substantial enough to void the foreclosure sale and that he therefore possesses superior title to the property. We disagree. Certainly, there are some irregularities or defects in a non-judicial foreclosure that could render the foreclosure sale void, such as "where the foreclosing party does not hold title to the secured note" or the "[f]ailure to provide notice of a foreclosure sale to owners of the foreclosed property." See Williams v. Kimes, 996 S.W.2d 43, 45 (Mo. 1999). We find, however, nothing in the record that creates a genuine issue of material fact regarding Wells Fargo's status as lawful holder of the note and the power

to appoint Kozeny as successor trustee. Nor are there any factual disputes sufficient to preclude summary judgment on the issue of whether the statutory notice requirements for non-judicial foreclosure were satisfied.

We first conclude that Wells Fargo was holder of the note and, thus, was entitled to appoint Kozeny as successor trustee to the deed of trust. "[T]he note and the deed of trust are inseparable, and when the promissory note is transferred, it vests in the transferee 'all the interest, rights, powers and security conferred by the deed of trust upon the beneficiary therein and the payee in the notes.'" Bellistri v. Ocwen Loan Servicing, LLC, 284 S.W.3d 619, 623 (Mo. Ct. App. 2009) (quoting St. Louis Mut. Life Ins. Co. v. Walter, 46 S.W.2d 166, 170 (Mo. 1931)); see also U.S. Bank Nat'l Ass'n v. Burns, 406 S.W.3d 495, 497 (Mo. Ct. App. 2013). Under Missouri law, a holder of a note is entitled to enforce the note. U.S. Bank Nat'l Ass'n, 406 S.W.3d at 497. A "holder" is a "person in possession if the instrument is payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession." Mo. Ann. Stat. § 400.1–201(20).[4]

Here, Wells Fargo has provided a copy of Lackey's 2007 promissory note that reflects a special endorsement by Bank of Blue Valley to Wells Fargo. Furthermore, we find in the record two notarized Appointment of Successor Trustee documents recorded by Wells Fargo that state Wells Fargo was the lawful holder of Lackey's

[4]In his brief, Lackey focuses on the difference between a special endorsement and an endorsement in blank in relation to Wells Fargo's endorsement stamp. However, this distinction is of no consequence in this case. Wells Fargo is only required to show a proper chain of negotiation with regard to the note. See Fed. Nat'l Mortg. Ass'n v. Bostwick, 414 S.W.3d 521, 525 (Mo. Ct. App. 2013), reh'g and/or transfer denied (Oct. 29, 2013), transfer denied (Dec. 24, 2013). Here, only two entities were involved in the negotiation of this note—Bank of Blue Valley and Wells Fargo. Whether Wells Fargo endorsed in blank is irrelevant because nothing in the record indicates that the note was negotiated to another entity prior to the successor trustee appointments.

2007 note at the time of both appointments. <u>See</u> App. 55, 59. We find these documents sufficient to show that Wells Fargo was indeed the lawful holder of the note for summary judgment purposes as Lackey has provided no evidence to the contrary. <u>Fields v. Millsap & Singer, P.C.</u>, 295 S.W.3d 567, 571 (Mo. Ct. App. 2009); <u>Millon v. JPMorgan Chase Bank, N.A.</u>, 518 F. App'x 491, 496 (8th Cir. 2013) ("'A party opposing a motion for summary judgment must show that admissible evidence will be available at trial to establish a genuine issue of material fact.'" (quoting <u>Churchill Bus. Credit, Inc. v. Pac. Mut. Door Co.</u>, 49 F.3d 1334, 1337 (8th Cir. 1995))). Accordingly, as holder of the note, Wells Fargo was entitled to appoint Kozeny as successor trustee, <u>Bremen Bank & Trust Co. of St. Louis v. Muskopf</u>, 817 S.W.2d 602, 607-08 (Mo. Ct. App. 1991), and Kozeny had the right to foreclose on the property. <u>Green v. Commerce Bank of St. Louis, N.A.</u>, 53 S.W.3d 229, 232 (Mo. Ct. App. 2001).

Next, we reject Lackey's argument that Missouri law required Wells Fargo to produce the original note at the time of the foreclosure proceeding. This argument is often referred to as the "show me the note theory," a theory consistently rejected by the United States District Courts in Missouri interpreting Missouri law[5] and several other courts nationally, including this court, deciding foreclosure actions brought under the governing state foreclosure laws.[6] Non-judicial foreclosures are generally

---

[5]<u>See, e.g.</u>, <u>Barnes v. Fed. Home Loan Mortg. Corp.</u>, No. 5:12-CV-06062-DGK, 2013 WL 1314200, at *4 (W.D. Mo. Mar. 28, 2013), <u>aff'd</u>, No. 13-2033, 2014 WL 67894 (8th Cir. Jan. 9, 2014); <u>Hobson v. Wells Fargo Home Mortg.</u>, No. 2:11CV00010 AGF, 2011 WL 3704815, at *2 (E.D. Mo. Aug. 24, 2011)

[6]<u>See, e.g.</u>, <u>Welk v. GMAC Mortg., LLC</u>, 720 F.3d 736, 738 (8th Cir. 2013); <u>Martins v. BAC Home Loans Servicing, L.P.</u>, 722 F.3d 249, 254-55 (5th Cir. 2013) (interpreting Texas law as not requiring the production of the original note prior to foreclosure); <u>Gallant v. Deutsche Bank Nat'l Trust Co.</u>, 766 F. Supp. 2d 714, 720-21 (W.D. Va. 2011); <u>Hogan v. Wash. Mut. Bank, N.A.</u>, 277 P.3d 781, 783 (Ariz. 2012); <u>JPMorgan Chase Bank, N.A. v. Erlandson</u>, 821 N.W.2d 600, 604 n.3 (Minn. Ct. App. 2012).

governed by the terms of the deed of trust, see Mildfelt v. Circuit Court of Jackson Cnty., Mo., 827 F.2d 343, 346 (8th Cir. 1987) (per curiam), and we find nothing in Lackey's deed of trust requiring the trustee or the successor trustee to show the original note to the borrower at any time prior to the foreclosure sale. Neither can we find any Missouri law that demands such action.[7]

Finally, we conclude that Lackey failed to provide "clear and satisfactory" evidence that the foreclosure sale was conducted improperly, more particularly that the statutory notice requirements were not met. See Petring v. Kuhs, 171 S.W.2d 635, 638 (Mo. 1943) (acknowledging that evidence must be "clear and satisfactory" to rebut the recitals in a trustee's deed concerning the foreclosure sale). "[T]he recitals in the trustee or mortgagee's deed concerning the default, advertisement, sale or receipt of the purchase money, and all other facts pertinent thereto, shall be received as prima facie evidence in all courts of the truth thereof." Mo. Ann. Stat. § 443.380; Fed. Nat'l Mortg. Ass'n v. Howlett, 521 S.W.2d 428, 432 (Mo. 1975). To rebut the recitals in the Trustee's Deed, Lackey points to Kozeny's initial attachment of certified mailing receipts representing that notice was mailed on August 24, 2010 and the subsequent attachment of certified mailing receipts representing that notice was mailed on August 19, 2011. Appellees explained in their motion for summary judgment that the initial attached mail receipts were attached by mistake as the receipts related to a prior non-judicial foreclosure action that was cancelled. A corrective deed was subsequently filed with the proper mailing receipts attached.

We are not persuaded that the attachment of two different certified mailing receipts creates a genuine issue of material fact as to whether Lackey received proper notice of the foreclosure sale. As the district court noted, the correct certified mailing receipts show that notice was sent to Lackey on August 19, 2011, after Wells Fargo's

---

[7]The one Missouri case that Lackey cites as support discusses a suit brought on the note itself not a non-judicial foreclosure. See Union Sav. Bank v. Cassing, 691 S.W.2d 513, 514 (Mo. Ct. App. 1985). Thus, that case is inapplicable.

second successor trustee appointment and "not less than twenty days prior to" the scheduled sale date of September 12, 2011. See Mo. Ann. Stat. § 443.325.3 (requiring that the foreclosing trustee "not less than twenty days prior to the scheduled date of the sale, cause to be deposited in the United States mail an envelope certified or registered, and with postage prepaid, enclosing a notice containing the information required in the published notice of sale . . . " addressed to the owner of the property). Kozeny mistakenly attached the wrong receipts to the initial Successor Trustee's Deed. The correct certified mailing receipts have since been attached and "constitute proof of compliance with notice requirements." Mo. Ann. Stat. § 443.325.3(4). Lackey has provided no evidence leading us to question the authenticity of the correct certified mailing receipts. Simply asserting that he has not received notice is insufficient to preclude summary judgment, as the statute makes it clear that actual receipt of notice is not required. See id. We therefore conclude that because the original Trustee's Deed and the Corrective Deed state that the foreclosure sale was conducted in compliance with governing statutes, and Lackey has failed to provide any "clear and satisfactory" evidence rebutting the recitals that notice was mailed, no genuine issue of material fact exists.[8]

Having determined that Lackey's wrongful foreclosure action fails, Lackey cannot show that he has superior title to the property and, therefore, cannot succeed on his quiet title action. See Ollison v. Vill. of Climax Springs, 916 S.W.2d 198, 203

---

[8]We note that Lackey makes a final attempt to rebut the prima facie evidence of the valid foreclosure sale by claiming that Appellees provided no explanation for its filing of the Corrective Deed. A notation, however, was written on the cover page of the deed stating that "Corrective STD is being re-recorded to attach the property Certified Mailing Receipts." App. 42. Moreover, there were no changes made to the language of the Successor Trustee's deed itself. The only change that occurred was the attachment of the correct certified mailing receipts, which is not enough to create a genuine issue of material fact as to whether notice was properly mailed.

(Mo. 1996) (per curiam) ("A plaintiff in an action to quiet title has the burden to prove title superior to the other party . . . .").

## III.

For the reasons stated above, we affirm the district court's grant of summary judgment.

_____